# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

|  |  |
|---|---|
| In re Search Warrant Seizure of<br>Folton County Voter Records | Case No. _____ |

## MEMORANDUM IN SUPPORT OF MOVANTS' EMERGENCY MOTION
## FOR RELIEF UNDER RULE 41(G) AND FOR INTERVENTION

## **TABLE OF CONTENTS**

INTRODUCTION......................................................................................1

PROCEDURAL HISTORY .......................................................................2

FACTS DEMONSTRATING NEED FOR LIMITATIONS ON
THE GOVERNMENT'S USE OF THE SEIZED VOTER RECORDS ...........3

I.    Georgia Voters Entrust Their Sensitive Data to State and Local
Election Officials to Participate in the Electoral Process................................3

II.    The FBI Seized Sensitive Voter Data Protected by These Guarantees...........3

III.    The Seizure Has Threatened the Sensitive Voter Data of Individual
Movants and Organizational Movants' Members. ...........................................4

IV.    Efforts by DOJ and Others to Obtain Sensitive Voter Records from
the 2020 Election Heighten Concerns about Privacy of Voter Data...............6

    A.    The Seizure Follows Numerous Efforts by the Government
and Others to Access 2020 Fulton County Election Records. .............6

    B.    DOJ's Efforts to Seek Sensitive Information of Every
U.S. Voter Indicate a Potential Effort to Misuse Voter Data
and Interfere with Voting Rights........................................................8

    C.    The President's Statements and Conduct Exacerbate
Movants' Concerns and the Adverse Effects of DOJ's Actions.........12

ARGUMENT ...........................................................................................13

I.    The Government's Seizure of Sensitive Voter Data Endangers
Movants' Constitutional and Statutory Rights. .............................................13

    A.    Movants Have Constitutionally Protected Interests in
Seized Data..........................................................................................13

    B.    Federal and State Statutes Protect Sensitive Voter Data. ...................16

II.    Movants Are Entitled to Relief as Aggrieved Parties under
Federal Rule of Criminal Procedure 41(g). ...................................................18

III.    Movants Are Entitled to Relief as Intervenors. .............................................21

IV.    The Requested Limitations on the Use of Sensitive Voter
       Information Are Necessary and Justified. ....................................................22

**CONCLUSION**.......................................................................................................**25**

# INTRODUCTION

With an explicit statutory guarantee of privacy, millions of Georgians entrusted the state with their sensitive personal information to participate in the electoral process. The January 28, 2026 seizure of records by the Federal Bureau of Investigation ("FBI") from the 2020 Fulton County general election under a search warrant breached that guarantee, infringed constitutional protections of privacy, and interfered with the right to vote. The seizure of records swept up sensitive voter data, such as personal information and records that show how individuals voted, with no apparent restrictions on how the government may use that information. Heightening the chill on registration and voting, the seizure occurred against the backdrop of two dozen federal lawsuits seeking unredacted state voter registration rolls for every voter in the country, on grounds that two courts thus far have deemed pretextual. *Infra* IV.B. Finally, the Department of Justice ("DOJ"), which now has custody of the information, answers to a President who days after the seizure, demanded Republicans to nationalize elections in "15 places" and promised, "You're gonna see something in Georgia."[1]

On behalf of their members, the National Association for the Advancement of Colored People ("NAACP"), National Association for the Advancement of

---

[1] Dan Bongino Show, *I'm Back (Ep 2443)*, Pandora, at 1:36:43-1:37:10 (Feb. 2, 2026), https://www.pandora.com/podcast/the-dan-bongino-show/im-back-ep-2443/PE:1321638594 [hereinafter "Dan Bongino Show"].

Colored People Georgia State Conference ("Georgia NAACP"), NAACP Atlanta, and the Georgia Coalition for the People's Agenda ("GCPA"), and 2020 Fulton County voters Dontaye Carter and Tamara Orange ask that the Court bar DOJ from using the seized information beyond the criminal investigation described in the search warrant. This relief does not turn on the legality of the warrant or the seizure. Rather, its justification lies in the constitutional and statutory protections for the right to vote, voter privacy, and ballot secrecy, which are fundamentally critical given the unprecedented assaults on the administration of elections.

## PROCEDURAL HISTORY

The FBI seized 2020 election records on January 28, 2026. Memorandum of Law in Support of Petitioners' Emergency Motion for Return of Property Pursuant to Federal Rule of Criminal Procedure 41(g) [Under Seal] at 5, *Pitts v. United States*, 1:26-CV-00809-JPB (N.D. Ga. Feb. 5, 2026), ECF No. 1-1 ("*Pitts* Br."). On February 4, the Chairman of the Fulton County Board of Commissioners and the Board of Registration and Elections, later joined by Fulton County ("collectively, "Petitioners"), moved for return of the seized materials under Federal Rule of Criminal Procedure 41(g), the unsealing of the warrant affidavit, and a standstill order preventing the government from using or reviewing copies of the seized materials until resolution of the motion. *Pitts* Br. at 24; Order, *Pitts v. United States*, 1:26-CV-00809-JPB (N.D. Ga. Feb. 9, 2026), ECF No. 19 (granting

joinder). The Court set an evidentiary hearing on Petitioners' motion for February

27. *Id.* ECF No. 26.

<u>**FACTS DEMONSTRATING NEED FOR LIMITATIONS ON THE**</u>
<u>**GOVERNMENT'S USE OF THE SEIZED VOTER RECORDS**</u>

I. **Georgia Voters Entrust Their Sensitive Data to State and Local Election**
**Officials to Participate in the Electoral Process.**

To register to vote, Georgians must submit sensitive, personally identifying

information, including their full birthdate, drivers' license number and social

security number. O.C.G.A. § 21-2-220.1. Georgia law prevents disclosure of

sensitive information, including "the month and day of birth, the social security

numbers, email addresses, and driver's license numbers of the electors, and the

locations at which electors applied to register to vote." O.C.G.A. § 21-2-225(b).

Voters entrust sensitive information to election officials to "be used only for voter

registration purposes." *Id.*; *see also* Ex. A, Declaration of Dontaye Carter ("Carter

Decl.") ¶ 4; Ex. B, Declaration of Tamara Orange ("Orange Decl.") ¶ 9; Ex. C,

Declaration of Helen Butler ("Butler Decl.") ¶¶ 16-18 (explaining how provisional

ballots linked voters to may destroy the secrecy of the ballot when seized).

II. **The FBI Seized Sensitive Voter Data Protected by These Guarantees.**

The warrant affidavit reveals that the seizure stems from a White House

directive. Notice of Filing – Redacted Warrant Affidavit, Exh. 1, Redacted

Affidavit of Case No. 1:26-MC-0158-CMS, at 6, *Pitts v. United States*, 1:26-CV-

00012-JPB (N.D. Ga. Feb. 10, 2026), ECF 22-1 ("FBI Warrant Affidavit"). "[T]his

warrant seeks the seizure of election records, to include paper ballots, ballot images, and absentee ballot envelopes." *id.* at 8. Categories sought include "Missing Ballot Images," "Duplicated Ballots," "Tabulator Tapes," and "Pristine Ballots." *Id.* at 8, 12, 13, & 16. However, the warrant does not provide a basis for seizing voter rolls or the sensitive information that might be found on ballots.

Nonetheless, the warrant sought seizure of "[a]ll voter rolls" from the 2020 General Election, *id.* at 3, which, as discussed below, *infra* Argument Section I.A, contain sensitive information protected from disclosure by Georgia law. The seizure even breaches the secrecy of ballots by "includ[ing] personal data and documents that could identify who voted for which candidate." *Pitts* Br. at 4. Further, the warrant authorized law enforcement officers and their agents, attorneys for the government, attorney support staff, and "technical experts" to store and review electronically store information "for independent review," FBI Warrant Affidavit at 3-4, thereby extending access beyond DOJ or the personnel working on the criminal investigation.

III. **The Seizure Has Threatened the Sensitive Voter Data of Individual Movants and Organizational Movants' Members.**

*NAACP, Georgia NAACP, and NAACP Atlanta.* As the NAACP affiliates, Georgia NAACP and NAACP Atlanta are nonpartisan organizations based in Georgia, with, collectively, approximately 8,500 members in 180 units across the state. Ex. D, Declaration of Quinette Westbrooks ("Westbrooks Decl.") ¶¶ 5, 8;

Ex. E, Declaration of David Means ("Means Decl.") ¶ 5; Ex. F, Declaration of
Quiana-Joy N. Ochiagha ("Ochiagha Decl.") ¶ 5. NAACP, Georgia NAACP, and
NAACP Atlanta engage in voter registration, education, and turnout efforts.
Oshiagha Decl. ¶ 8; Westbrooks Decl. ¶¶ 9-10; Means Decl. ¶ 6. NAACP members
include registered Black voters who participated in the 2020 General Election in
Fulton County and whose information is in the Fulton County voter rolls.
Westbrooks Decl. ¶ 8; Means Decl. ¶ 3; Carter Decl. ¶ 5; *see also* Oshiagha Decl. ¶
5.   Based on federal government's prior actions and statements frame, NAACP
members believe there is a substantial risk their sensitive data will use be
improperly disclosed to agencies and third parties or misused to create a national
voter database, purge eligible voters, or used for other improper purposes, chilling
their right to vote, free from intimidation. Oshiagha Decl. ¶ 11-20; Westbrooks
Decl. ¶¶ 12, 15-18; Means Decl. ¶¶ 10-14; Carter Decl. ¶¶ 10-16.

***Dontaye Carter****.* Mr. Carter has been an active member of Atlanta NAACP
for eight years**.** Carter Decl. ¶ 3. He is a registered voter in Fulton County who
voted in the 2020 General Election. *Id.* ¶¶ 2. He is concerned about the misuse of
his sensitive data by the federal government. *Id.* ¶¶ 10-16.

***GCPA.*** A nonpartisan nonprofit in Atlanta, GCPA is a coalition of more
than 30 organizations with more than 5,000 individual members across Georgia.
Butler Decl. ¶¶ 4-5. Voting rights are central to the Coalition's mission. *Id.* ¶ 7-8. It

regularly commits time and resources to voter registration drives, including for young first-time voters, voter education, voter ID assistance, and other get-out-the-vote operations, particularly among Black and other underrepresented communities. *Id.* ¶ 8. Its individual members include registered voters whose data is at issue and concerned about the government's seizure and misuse. *Id.* ¶ 5, 12.

**Tamara Orange.** Ms. Orange resides in Fulton County and is an active member of GCPA. Orange Decl. ¶¶ 2, 5. She has a long history of being a Georgia voter. *Id.* ¶ 6. She voted in the 2020 General Election in Fulton County. *Id.* ¶ 7.

## IV. Efforts by DOJ and Others to Obtain Sensitive Voter Records from the 2020 Election Heighten Concerns about Privacy of Voter Data.

### A. *The Seizure Follows Numerous Efforts by the Government and Others to Access 2020 Fulton County Election Records.*

President Trump and his allies have made numerous failed attempts to re-litigate the 2020 election, specifically targeting Fulton County. President Trump filed two lawsuits alleging that Fulton County election officials engaged in fraud, voluntarily dismissing both the day after the January 6, 2021 insurrection. Petition, at ¶¶ 188-191, *Trump v. Raffensperger*, No. 2020CV343255 (Ga. Super. Ct. Fulton Cnty. Dec. 4, 2020); Notice of Voluntary Dismissal Without Prejudice, *Trump v. Raffensperger*, No. 2020CV343255 (Ga. Super. Ct. Jan. 7, 2021); Complaint for Emergency Injunctive and Declaratory Relief, at ¶ 17, *Trump v. Kemp,* No. 1:20-CV-05310-MHC (N.D. Ga. Dec. 31, 2020), ECF No. 1; Notice of Voluntary

6

Dismissal, *Trump v. Kemp,* No. 1:20-CV-05310-MHC (N.D. Ga. Jan. 7, 2021), ECF No. 22. In addition, Trump allies filed a lawsuit seeking much of the same information the FBI seized. A court mostly dismissed the case, requiring the plaintiffs to pay over $38,000 in attorney's fees to the county and the clerk. Order on the Many Pending Motions at 14, *Favorito v. Wan*, No. 2020CV343938 (Ga. Super. Ct. Feb. 4, 2026)*.* Similarly, in September 2024, a member of the Fulton County Board of Registration and Elections sought a declaration that she was entitled to review election records before voting to certify, which led the Fulton County Clerk of Courts to place the records under seal pending resolution of the issue. *See Adams v. Fulton County*, 918 S.E.2d 402, 403-04 (Ga. App. 2025); *Pitts* Br. at 6-7. After President Trump was re-elected, the Georgia State Election Board subpoenaed the 2020 election records twice and asked DOJ to assist its efforts. Complaint at ¶¶ 15-17, *United States v. Alexander*, No. 1:25-cv-07084 (N.D. Ga. Dec. 11, 2025) ("Alexander Compl."), ECF No. 1. On December 12, 2025, shortly before the seizure, DOJ sued the Fulton County Clerk demanding the 2020 election records under Title III of the Civil Rights Act of 1960. *See id.* These repeated efforts to access 2020 election records, including by the entity that now has custody of them, heightens concerns about the privacy and security of sensitive voter data and exacerbates the chill on voting rights.

B.    *DOJ's Efforts to Seek Sensitive Information of Every U.S. Voter Indicate a Potential Effort to Misuse Voter Data and Interfere with Voting Rights.*

1.    DOJ Seeks the Unredacted Electronic Voter Rolls of Every State.

DOJ's efforts to obtain the sensitive voter data of every voter engender grave concern about its intended use of voters' seized data. A former Deputy Assistant Attorney General of the DOJ's Civil Rights Division said in September 2025 that the government's goal was to obtain voter rolls from all 50 states "so that the government could get the last four digits of every voter's Social Security number." *United States v. Weber*, No. 2:25-cv-09149, 2026 WL 118807, at \*10 (C.D. Cal. Jan. 15, 2026). DOJ has sued 24 states and the District of Columbia for not producing complete unredacted voter lists.[2] DOJ has purported to seek that information to investigate state list maintenance compliance under two federal statutes—a purpose deemed invalid by two courts to have addressed DOJ's lawsuits on the merits. *Weber*, 2026 WL 118807, at \*9; *United States v. Oregon*, No.  6:25-cv-01666, 2026 WL 318402, at \*9 (D. Ore. Feb. 5, 2026). Georgia Secretary of State Raffensperger has resisted DOJ's efforts due to Georgia law's privacy protections. Complaint, at ¶ 24, *United States v. Raffensperger*, No. 1:26-CV-00485 (N.D. Ga. Jan. 23, 2026), ECF No. 1. By seizing Fulton County voter

---

[2] *See* Kaylie Martinez-Ochoa, Eileen O'Connor & Patrick Berry, *Tracker of Justice Department Requests for Voter Information*, Brennan Ctr. for Just. (Feb. 13, 2026), https://www.brennancenter.org/our-work/research-reports/tracker-justice-department-requests-voter-information.

records, however, DOJ has largely obtained the information sought in its civil

lawsuit against the Secretary.[3]

    2.    Three Courts Rejected DOJ's Grab for Voter Data.

    DOJ's explanations of why it seeks the sensitive data of every U.S. voter

justify the fears of Movants and other voters that the seized voter information will

be misused or weaponized absent the relief sought. Two courts deemed DOJ's

stated purpose for seeking unredacted statewide voter rolls—investigating

compliance with the National Voter Registration Act of 1993 ("NVRA") and the

Help America Vote Act—invalid. *Weber*, 2026 WL 118807, at \*9; *Oregon*, 2026

WL 318402, at \*9. Another court rejected DOJ's grab as a failure to request

records falling within the statute. Opinion at 20-22, *United States v. Benson*, No.

1:25-cv-01148 (W.D. Mich. Feb. 10, 2026), ECF No. 67. One court called the

government's asserted purpose "pretextual." *Weber*, 2026 WL 118807, at \*10, 12;

*see also Oregon*, 2026 WL 318402, at \*11. It found that the voter data DOJ seeks

"is being used to compile a national database with millions of voters' private

information," *id.* at \*11. Such a consolidation "would have a chilling effect on

voter registration" that "threatens the right to vote which is the cornerstone of

American democracy." *Id.* at 20.

---

[3] Although the voting rolls seized are for the 2020 election, the vast majority of registered 2020 voters are still registered in 2026, and their sensitive voter information has not changed.

Such use of the seized data is not the only risk to voter privacy posed by

DOJ's actions. Citing concerns by a DOJ lawyer, the *Weber* court found that "there

appears to be a different purpose" beyond DOJ's stated reason for seeking the

data—"broader immigration enforcement." *Id*. at *11. The court further noted that

DOJ's coordination with the Department of Homeland Security ("DHS")

corroborated that concern, emphasizing that it "does not take lightly DOJ's

obfuscation of its true motives in the present matter." *Id.* at *11-12. The *Oregon*

court reached the same conclusion. 2026 WL 318402, at *11. In doing so, it cited

the letter Attorney General Bondi sent to the Minnesota Governor amid a surge in

immigration enforcement, less than two weeks after an Immigration and Customs

Enforcement ("ICE") agent killed Renee Good and on the same day that ICE

agents killed Alex Pretti[4]. *Id*. Bondi's letter cited lawlessness in Minnesota and

posed numerous solutions to restoring the rule of law, including the turnover of

Minnesota's voter rolls. *Id.* The court found that "[t]he context of this demand

within a letter about immigration enforcement casts serious doubt as to the true

purposes for which [DOJ] is seeking voter registration lists in this and other cases,

and what it intends to do with the data." *Id.* In the court's view, DOJ's assurances

---

[4] Joshua Barajas, *A second U.S. citizen was killed by federal forces in Minneapolis. Here's what we know*, PBS News (Jan. 27, 2026 4:04 PM), https://www.pbs.org/newshour/nation/a-second-u-s-citizen-was-killed-by-federal-forces-in-minneapolis-heres-what-we-know.

that "private and sensitive data will remain private and used only for a declared and limited purpose . . . must be thoroughly scrutinized and squared with its open and public statements to the contrary." *Id.*

Other government actions create further alarm regarding potential misuse of the seized voter data. The administration has inadequately protected the security of sensitive data. For example, DOJ disclosed that the Department of Government Efficiency ("DOGE") actors may have transferred sensitive information from the Social Security Administration ("SSA") to an unauthorized person and were storing SSA data on an unauthorized server. Notice of Corrections to the Record, at 5-6, *Am. Fed. of State, Cnty. & Mun. Emps. v. Soc. Sec. Admin.*, No. 1:25-CV-00596-ELH (D. Md. Jan. 16, 2026), ECF No. 197. DOGE actors also entered a "Voter Data Agreement" with a "political advocacy group" that approached DOGE with acquired state voter rolls and whose "stated aim was to find evidence of voter fraud and to overturn election results in certain States." *Id.* at 5. Additionally, in a filing last week, the Internal Revenue Service admitted to improperly disclosing the tax data of 47,289 individuals to DHS. Declaration of Dottie A. Romo, at ¶ 10, *Centro de Trabajadores Unidos v. Bessent*, No. 25-5181 (D.C. Cir. Feb. 11, 2026). The administration's failure to protect sensitive information and its coordination with election conspiracy theorists further shows the need to limit use of the seized voter data to protect confidentiality.

11

C.    *The President's Statements and Conduct Exacerbate Movants' Concerns and the Adverse Effects of DOJ's Actions.*

In addition to these circumstances, the agency controlling the seized data answers to a President committed to proving flat-earth theories that he won the 2020 election, increasing actual and perceived risks that the seized data will be improperly used and disseminated. A week before the seizure, President Trump claimed that the 2020 election was "rigged" and that "people will soon be prosecuted for what they did."[5] A few days after the seizure, he declared Republicans "should take over the voting" in 15 states, they "ought to nationalize the voting, and "you're gonna see something in Georgia where they were able to get with a court order and the ballots."[6] Later, President Trump posted a video claiming deliberate tampering with voting machines in battleground states and depicting former President Obama and the former First Lady as apes.[7] The President explained that the video "was about voter fraud, some place, Georgia, there was a lot of voter fraud, 2020 voter fraud." *Id.*

---

[5] Cheyanne M. Daniels, *Trump says individuals will soon be prosecuted for 2020 election*, Politico (Jan. 21, 2026 11:25 AM), https://www.politico.com/news/2026/01/21/trump-2020-election-prosecutions-00738778.

[6] Dan Bongino Show, *supra* note 1.

[7] Ryan Mancini, *Trump says 'of course' he condemns racist post about Obamas, declines to apologize*, Hill (Feb. 6, 2026 9:23 PM), https://thehill.com/homenews/administration/5727431-trump-declines-apologize-obamas-video/.

## **ARGUMENT**

Movants are entitled to reasonable relief to protect their constitutional and statutory rights, including the fundamental right to vote and privacy rights protected by the Fourteenth Amendment, and federal and state statutes. The Court has the equitable power under Rule 41(g) to order reasonable limits on the government's use of the seized data and to prohibit its use for purposes beyond the criminal investigation described in the search warrant affidavit.

I.    **The Government's Seizure of Sensitive Voter Data Endangers Movants' Constitutional and Statutory Rights.**

A.    *Movants Have Constitutionally Protected Interests in Seized Data.*

As the Supreme Court has recognized, "No right is more precious in a free country than that of having a voice in the election of those who make the laws . . . Other rights, even the most basic, are illusory if the right to vote is undermined." *Williams v. Rhodes*, 393 U.S. 23, 31 (1968) (noting First Amendment interests in right to vote); *Yick Wo v. Hopkins*, 118 U.S. 356, 370 (1886) (right to vote is "preservative of all rights"); *Carrington v. Rash*, 380 U.S. 89, 96 (1965) (applying Equal Protection Clause of the Fourteenth Amendment to protect the right to vote).

The seizure of voter rolls without limitation on the use of that information chills Movants' fundamental right to vote. As the *Weber* court held in determining that DOJ could not compel access to California's unredacted voter list, the *request*

13

for the information there "stands to have a chilling effect on American citizens like political minority groups and working-class immigrants who may consider not registering to vote or skip casting a ballot because they are worried about how their information will be used." *Weber*, 2026 WL 118807, at *2. It further concluded that consolidation of that information by the federal government "would have a chilling effect on voter registration which would inevitably lead to decreasing voter turnout as voters fear that their information is being used for some inappropriate or unlawful purpose." *Id.* at 20.

The government's seizure of voter records further chills Movants' right to vote by violating the secrecy of the ballot in Fulton County. The confidentiality of voters' choice of candidates is sacrosanct. It preserves "the hard-won right to vote one's conscience without fear of retaliation." *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 343 (1995). In fact, the Georgia Constitution mandates elections "by secret ballot." Ga. Const. art. II, § 1, ¶ I; *see also* O.C.G.A. § 21-2-500 (requiring ballots and other election documents to remain under seal); O.C.G.A. § 21-2-418(e) (requiring "the security, confidentiality, and integrity of personal information collected, stores, or otherwise used" of provisional ballots). The Georgia Supreme Court has held that a "voter's right of secrecy for whom he cast his ballot is inviolate." *Taggart v. Phillips*, 242 S.E.2d 245, 246 (Ga. 1978); *see also, e.g.*, *Miller v. Kilpatrick*, 230 S.E.2d 328, 329 (Ga. 1976) ("It is basic in the

14

American democratic process of elections that an individual voter's right to privacy as to how he cast his ballot is inviolate."); *Burson v. Freeman*, 504 U.S. 191, 214 (1992) (Scalia, J., concurring) (noting that the secret ballot is a "venerable . . . part of the American tradition"). Indeed, Georgia law criminalizes nonconsensual disclosure of how an elector voted. O.C.G.A. § 21-2-568(a)(4). Limiting DOJ's use of the materials seized will minimize the damage caused by this fundamental breach of voter privacy.

Movants also possess enforceable First and Fourteenth Amendments rights. The First Amendment protects any information seized related to Movants' political expression. *Weber*, 2026 WL 118807, at *17 (*citing Buckley v. Am. Const. L. Found., Inc.*, 525 U.S. 182 (1999) and *Rutan v. Republican Party of Illinois*, 497 U.S. 62 (1990)); *see also Fed. Election Comm'n v. Larouche Campaign*, 817 F.2d 233, 234-35 (2d Cir. 1987) (protecting information that would "compromise the privacy of individual political associations").

The Fourteenth Amendment likewise protects Movants' right to keep private information confidential. *See, e.g.*, *Corbitt v. Sec'y of the Ala. L. Enf't Agency*, 115 F.4th 1335, 1350–51 (11th Cir. 2024) (recognizing "an individual's interest in avoiding disclosure of personal matters"); *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 273 (2022) (distinguishing "the right to shield information from disclosure" from "the right to make and implement important personal decisions

without governmental interference"). This right to informational privacy

encompasses private information in voter data. *See Moore v. Kobach*, 359

F.Supp.3d 1029, 1050 (D. Kan. 2019) (holding voters had reasonable expectation

of privacy in information contained in voter lists). The government violates this

right in revealing even properly obtained personal information to third parties

without permission. *See Fadjo v. Coon*, 633 F.2d 1172, 1175 (5th Cir. 1981)

(holding state "may have invaded [individual's] privacy" in revealing confidential

personal information "even if the information was properly obtained"); *see also*

*Corbitt*, 115 F.4th 1335 at 1350-51 (acknowledging "constitutional right to privacy

… for intimate personal information given to a state official in confidence");

*James v. City of Douglas*, 941 F.2d 1539, 1544 (11th Cir. 1991) (same).

B.    *Federal and State Statutes Protect Sensitive Voter Data.*

State and federal statutes protect sensitive voter data. Georgia law expressly

protects sensitive data from disclosure, including "the month and day of birth, the

social security numbers, email addresses, and driver's license numbers of the

electors, and the locations at which the electors applied to register to vote."

O.C.G.A. § 21-2-225(b). Additionally, courts analyzing requests for disclosure of

voter records under the NVRA, 52 U.S.C. § 20507(i), traditionally require states to

redact sensitive information. *See, e.g.*, *Pub. Int. Legal Found., Inc. v. Bellows*, 92

F.4th 36, 55 (1st Cir. 2024) (noting "privacy concerns implicated by the public

16

release"); *Jud. Watch, Inc. v. Lamone*, 399 F. Supp. 3d 425, 446 (D. Md. 2019) (validating privacy concerns in light of "massive data breaches, and the rampant misuse of personal identifying information"); *True the Vote v. Hosemann*, 43 F. Supp. 3d 693, 736 (S.D. Miss. 2014) (discussing privacy risks in disclosing birthdates and social security numbers). Courts recognize that voters are entitled to the confidentiality of private information in the state's files. *See, e.g.*, *Weber*, 2026 WL 118807, at *12 (noting "longstanding precedent that states are entitled to redact sensitive voter information, like social security numbers and birthdates"). So does this Court. Relying on "privacy principles embodied in Georgia law" and a "preference" in the Federal Rules of Civil Procedure "for the privacy of personal information," one court in the Northern District of Georgia required the redaction of voter applicants' telephone and social security numbers, email addresses, and birth dates. *Project Vote, Inc. v. Kemp*, 208 F.Supp.3d 1320, 1345 (N.D. Ga. 2016).

State and federal laws also create privacy rights in Movants' private information. The Privacy Act of 1974 prohibits the federal government from maintaining any "record describing how any individual exercises rights guaranteed by the First Amendment unless expressly authorized by statute or by the individual about whom the record is maintained or unless pertinent to and within the scope of an authorized law enforcement activity." 5 U.S.C. § 552a(e)(7); *Weber,* 2026 WL 118807, at *17-18. The Driver's Privacy Protection Act ("DPPA") prohibits

17

disclosure of personal information in a motor vehicle record except in limited circumstances. 18 U.S.C. § 2721(a); 2026 WL 118807, at *19. Georgia law similarly requires redaction of private information prior to disclosure of public records, including social security numbers and date of birth, among other information. O.C.G.A. § 50-18-72(a)(20)(A); *see also id.* § 21-2-225.1 (confidentiality of addresses for voters with protective orders).

## II. Movants Are Entitled to Relief as Aggrieved Parties under Federal Rule of Criminal Procedure 41(g).

The unprecedented and extraordinary nature of the facts and circumstances here make this matter precisely the "exceptional case[] where equity demands intervention." *In re Sixty-Seven Thousand Four Hundred Seventy Dollars*, 901 F.2d 1540, 1544 (11th Cir. 1990). Movants' members provided Georgia their personal data, with a state guarantee not to disclose that information. Carter Decl. ¶ 4; Orange Decl. ¶¶ 8-9. In breaching Georgia's statutory guarantee to protect their personal data, the search warrant undermines Movants' interest in the privacy of this property, especially if information is disseminated further. This seizure subjects Movants' members to increased risks of unjustified interference with their voting rights and unauthorized disclosure also could threaten their safety.

A person "aggrieved" by the government's seizure of property under a search warrant "may move for the property's return" and other relief. Fed. R. Crim. P. 41(g) & advisory committee's note to 1989 amendment (explaining "equitable

considerations" under Rule 41(e) may justify relief beyond return, extending to the destruction of seized records). Such "property" may include "documents, books, papers, any other tangible objects, and information." Fed. R. Crim. P. 41(a). "[R]easonableness under all of the circumstances must be the test" in determining relief. *Id.* advisory committee's notes to 1989 amendment. In the Eleventh Circuit, "Rule 41(g) rulings are based on a balancing of the equities," *United States v. De La Mata*, 535 F.3d 1267, 1279 (11th Cir. 2008); *see also Trump v. United States*, No. 22-13005, 2022 WL 4366684, at *7 (11th Cir. Sept. 21, 2022) ("equitable principles" govern Rule 41(g) motions). Further, courts can fashion flexible relief to protect movants' interests and the government's interest in legitimate criminal investigations. Fed. R. Crim. P. 41 advisory committee's note to 1989 amendment ("[R]easonable accommodations might protect both the law enforcement interests of the United States and the property rights of property owners and holders.").

Courts weigh four factors in determining whether to exercise equitable jurisdiction under Rule 41(g). *Trump*, 2022 WL 4366684, at *7. The first factor considers whether the government displayed a callous disregard for constitutional rights in seizing the items at issue. *Id.* Such callous disregard need not equate to an unlawful search or seizure, as persons aggrieved by the government's possession of lawfully seized property may obtain relief under Rule 41(g). *See* Fed. R. Crim. P. 41(g) & advisory committee's note to 1989 amendment. The remaining three

factors consider whether the movant "has an individual interest in and need for the material;" whether the movant "would be irreparably injured" by denying return of the property; and whether "the plaintiff has an adequate remedy at law for the redress of their grievance." *Trump*, 2022 WL 4366684, at *7.

The first factor supports exercising jurisdiction. The government's seizure of sensitive voter data without restrictions on how the government may use it jeopardizes the security of Movants' constitutional rights. *See supra* Argument Section I.A. The seizure without limitation on use chills Movants' fundamental right to vote, including by potential exposure of voters' election choices and the risk of misuse of sensitive voter data for other ends. Seizure chills and infringes on Movants' First Amendment right to political expression and their Fourteenth Amendment right to keep private information confidential. *See In re Sealed Search Warrant*, 11 F.4th 1235, 1247 (11th Cir. 2021) (applying Rule 41(g) to where intervenors sought to vindicate privacy interests). It trespasses on statutory privacy protections. The government's seizure also prevents Movants from exercising their rights under the Georgia Open Records Act to request public records.

As to the remaining factors, denial of Movants' request for reasonable restrictions would irreparably injure Movants by infringing their constitutional and statutory rights. *See Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably

20

constitutes irreparable injury."); *Ne. Fla. Chapter of the Ass'n of Gen. Contractors of Am. v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990) (recognizing that ongoing First Amendment privacy violations constitute irreparable injury). Movants, as third parties to the criminal case, do not otherwise have an adequate remedy at law. *See Black v. United States*, 172 F.R.D. 511, 515 (S.D. Fla. 1997) ("[Third parties in pending criminal cases] have no viable procedural means of raising the work product and attorney-client privilege on their own behalf."). Even if they were parties, suppression is inadequate where the government has not yet brought criminal charges, and it "does not redress the government's intrusion into . . . personal and privileged affairs." *In re Sealed Search Warrant*, 11 F.4th at 1247. Movants are entitled to relief under Rule 41(g) to protect these rights.

## III.    Movants Are Entitled to Relief as Intervenors.

Alternatively, Movants seek intervention in the search warrant proceeding. Nonparties within the Eleventh Circuit may intervene in a matter concerning a criminal search warrant. Intervention is permitted where "a third party's constitutional or other federal rights are implicated by the resolution of a particular motion, request, or other issue during the course of a criminal case." *United States v. Carmichael*, 342 F.Supp.2d 1070, 1072 (M.D. Ala. 2004) (collecting cases regarding intervention to protect First Amendment rights); *see also In re Sealed Search Warrant v. Barth*, No. 22-12791, 2023 WL 4995735, at *2 (11th Cir. Aug.

4, 2023) (applying Rule 24(a) intervention factors to a third party in a warrant affidavit); *In re Sealed Search Warrant*, No. 20-MJ-03278, 2020 WL 6274987, at *3-6 (S.D. Fla. Oct. 26, 2020) (same). A Northern District of Georgia court has permitted third-party intervention in criminal proceedings to protect information. *In re Grand Jury Investigation No. 83-30557*, 575 F.Supp. 777, 778 (N.D. Ga. 1983) (granting intervention to assert attorney-client privileges).

Because the government's seizure infringed Movants' constitutional and federal rights, the Court can grant the relief they seek as intervenors who are timely filing to protect their protected privacy and voting interests. *Supra* Argument Section I (discussing privacy and voting rights interest protected by the federal and state constitutional and statutory law).

## IV.    The Requested Limitations on the Use of Sensitive Voter Information Are Necessary and Justified.

The government's unprecedented efforts to obtain sensitive voter records necessitate reasonable restrictions on its ability to search and use the data it seized. Specifically, the Court should restrict the government to using the seized data for purposes of its criminal investigation. The government has no legitimate interest in keeping and using the seized data for other purposes. *See In re Se. Equip. Co. Search Warrant*, 746 F. Supp. 1563, 1574 (S.D. Ga.1990) ("[I]f the Government's legitimate interests can be satisfied even if the property is returned, continued retention of the property can become unreasonable."). These reasonable restrictions

22

are necessary to protect Movants' constitutional and statutory interests in the seized information. *See supra* Argument Section I.

Movants request that the Court (1) limit the government's use of the seized materials to its criminal investigation into the 2020 election in Fulton County, as identified in the search warrant; (2) prohibit secondary uses of the information for merging of the data into a national database, purported verification of voter eligibility and other efforts to purge state or local voting rolls, list maintenance, election administration, immigration enforcement, or other unrelated activities; (3) prohibit disclosure to the public or non-governmental organizations or individuals; and (4) mandate that the government disclose (i) an inventory of all documents and records (including electronic records) seized; (ii) all persons who have accessed the records, beyond those involved in the criminal investigation; (iii) any copying or reproduction of the records; and (iv) all efforts to secure the information; and (5) disclose the warrant inventory to Movants.

The Court has broad remedial authority to prevent misuse of seized data for purposes beyond the search warrant. *See United States v. Potes Ramirez*, 260 F.3d 1310, 1315 (11th Cir. 2001) ("If the district court finds . . . that an equitable remedy is appropriate, then the court has authority to fashion equitable relief."); *Snitko v. United States*, 90 F.4th 1250, 1265-66 (9th Cir. 2024) (granting relief through the disposal of records the FBI improperly seized to investigate crimes

unrelated to original criminal investigation). Courts have exercised this authority to protect third-party constitutional and statutory rights. *See, e.g*, *In re Sealed Search Warrant*, 11 F.4th 1235, 1247 (11th Cir. 2021) (affirming court's authority to "safeguard[] [intervenors'] privacy"); *Black v. United States*, 172 F.R.D. 511, 515–17 (S.D. Fla. 1997) (ordering relief tailored "to safeguard and protect the vitally important constitutional guarantees of confidentiality").

Courts also recognize the need for reasonable restrictions to *prevent* constitutional and privacy injuries before injuries occur and render redress meaningless. In *In re Sealed Search Warrant*, the Eleventh Circuit upheld the district court's modification of a filter protocol following execution of a search warrant to prevent the government's wrongful review of privileged materials. 11 F.4th at 1239. The Court reasoned that "[o]nce the government improperly reviews privileged materials, the damage to the Intervenors' interests is 'definitive and complete'"; "review later would be incapable of vindicating the Intervenors' privacy interests." *Id.* at 1247. Similarly, in *Black*, a district court required court review of seized material "before the Government proceeds with any examination." *Black*, 172 F.R.D. at 515. Any relief "would have no meaning if the Government were able to review the materials in the meantime." *Id.*

## CONCLUSION

Movants respectfully ask the Court to expedite consideration of this motion so that reasonable relief may be granted before the federal government disseminates the seized voter information beyond the agents responsible for its criminal investigation. Movants do not believe that this Motion raises contested issues of fact necessitating a hearing. For the foregoing reasons, Movants ask the Court to order the reasonable limitations identified above on the government's use of the seized voter data.

Dated: February 15, 2026

Respectfully submitted,

Edward G. Caspar*
Leah Frazier*
Robert N. Weiner*
Jeffrey Blumberg*
Julie Houk*
Catherine Meza*
Marc Epstein*
Grace Thomas*
LAWYERS' COMMITTEE FOR
CIVIL RIGHTS UNDER LAW
1500 K Street NW, Suite 900
ecaspar@lawyerscommittee.org
lfrazier@lawyerscommittee.org
rweiner@lawyerscommittee.org
Jblumberg@lawyerscommittee.org
jhouk@lawyerscommittee.org
cmeza@lawyerscommittee.org
mepstein@lawyerscommittee.org
gthomas@lawyerscommittee.org
Washington, D.C. 20005
Telephone: (202) 662-8600
Facsimile: (202) 783-0857

*/s/ Gerald Weber*
Gerald Weber (GA Bar No. 744878)
Law Offices of Gerry Weber, LLC
Post Office Box 5391
Atlanta, Georgia 31107
Telephone: (404) 522-0507
wgerryweber@gmail.com

*Attorneys for Movants National Association for the Advancement of Colored People ("NAACP"), National Association for the Advancement of Colored People Georgia State Conference ("Georgia NAACP"), NAACP Atlanta, Georgia Coalition for the People's Agenda, Dontaye Carter, and Tamara Orange*

*\* Application to appear pro hac vice forthcoming*

25

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1, the undersigned counsel hereby certifies that this document has been prepared with one of the font and point selections approved by the Court in Local Rule 5.1.

Dated this 15th day of February 2026.

*/s/ Gerald Weber*

Gerald Weber (GA Bar No. 744878)
wgerryweber@gmail.com
Law Offices of Gerry Weber, LLC
Post Office Box 5391
Atlanta, Georgia 31107
Telephone: (404) 522-0507


## CERTIFICATE OF SERVICE

I hereby certify that on February 15, 2026, I electronically filed this document with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the attorneys of record.

Dated this 15th day of February 2026.

*/s/ Gerald Weber*

Gerald Weber (GA Bar No. 744878)
wgerryweber@gmail.com
Law Offices of Gerry Weber, LLC
Post Office Box 5391
Atlanta, Georgia 31107
Telephone: (404) 522-0507